IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERIKA L.,[1] | Case No. 1:23-cv-00054-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Erika L. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the ALJ's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was fifty-one years old on August 17, 2018, the alleged disability onset date, and has a high school education. (Tr. 71, 272.) In her applications, Plaintiff alleges disability due to a broken C1 in her neck, a hernia, emphysema, and anxiety. (Tr. 271.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on June 2, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 87, 106, 114, 123, 166.) Plaintiff and a vocational expert ("VE") appeared and testified at an

administrative hearing held before an ALJ on November 10, 2021. (Tr. 29-68.) On February 2, 2022, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 13-28.) On November 21, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If

the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-23.) At step one, the ALJ concluded that Plaintiff engaged in substantial gainful activity in 2019, did not engage in substantial gainful activity in 2020, and substantial gainful activity in 2018 was unclear. (Tr. 15-16.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: cervical and lumbar degenerative disc disease, bilateral hand osteoarthritis, and a hernia. (Tr. 16.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id*.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds, (2) Plaintiff can frequently stoop and crouch, but only occasionally crawl, and (3) Plaintiff can occasionally reach overhead bilaterally. (*Id*.)

At step four, the ALJ found that Plaintiff could perform her past work as a marker II, automobile services cashier, and cleaner, housekeeping. (Tr. 20.) At step five, the ALJ alternatively found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as routing marker clerk, collator operator, and office helper. (Tr. 22.)

///

///

///

///

# DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by (i) failing to provide specific, clear, and convincing reasons supported by substantial evidence for discounting her symptom testimony; (ii) improperly discounting the medical opinion of Plaintiff's nurse practitioner, Nancy Vanderwall ("Vanderwall"); and (iii) formulating an RFC that failed to include all of Plaintiffs' limitations.[2] (Pl.'s Opening Br. ("Pl.'s Br.") at 2-18, ECF No. 19.) For the reasons explained below, the Court affirms the Commissioner's decision.

## I. PLAINTIFF'S SYMPTOM TESTIMONY

### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

///

---

[2] Plaintiff initially argued that the ALJ also erred by failing to find that Plaintiff's impairment met listing 1.15, but Plaintiff conceded in her reply that her impairment does not meet the listing. (Pl.'s Reply Br. at 15, ECF No. 27.) Accordingly, the Court does not address this argument.

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 137, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

#### 1.     Plaintiff's Symptom Testimony

At the hearing, Plaintiff testified that she is unable to work due to "excruciating" pain in her neck when she looks down, that the pain causes spasms, her arm becomes numb and weak, and her hands tense up. (Tr. 46.) Plaintiff stated that due to the worsening pain she was experiencing, she left her parts assembly job she had held from 2017 through 2018 and began a new job as a housekeeper in 2019, believing an occupation that required more movement would lessen the pain she was experiencing because the new job would require less looking down. (Tr. 40-46.) Plaintiff testified that she faced difficulties due to pain while working as a housekeeper as well, often having others finishing her duties for her. (Tr. 47.) Plaintiff further testified that while she was unable to do parts of her job duties, she speculated the reason they did not fire her was because her employer could not find other reliable employees. (Tr. 48.) Plaintiff explained that she did not have a special relationship with her employers, and that her employment only ended due to COVID-19 layoffs. (Tr. 49.)

When asked specifically about her impairments, Plaintiff testified that she has reduced range of motion to the point that she can only minimally turn her head to the left and right, that she must keep her head steady at eye level rather than tilted up or down, and that looking down

PAGE 6 – OPINION AND ORDER

causes "excruciating" pain in her neck with radiating intermittent pain in her arm, ringing in her ears, headaches from the pressure in her neck, and back pain. (Tr. 50.) Plaintiff stated that her impairments also caused problems in her activities of daily living, restricting her ability to lift, carry, look down, and move her head. (Tr. 52.) She explained that she needs assistance taking a shower, that she "[does not] really do too many chores," and that her husband takes on the bulk of the housework. (*Id.*) Plaintiff further testified that the pain and numbness in her right arm and hand, caused by the pain in her neck, has limited the use of her right hand to such a degree that she is unable to grip jars and utensils and she has had to learn how to use her non-dominant left hand. (Tr. 53.)

Plaintiff also testified that she received unemployment benefits after losing her housekeeping job, and that, despite her symptoms, she believed she could do the jobs for which she was applying. (Tr. 51.)

### 2. The ALJ's Findings

In discounting Plaintiff's testimony, the ALJ explained that the "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the work activity during the period at issue despite the alleged degree of limitation that has remained essentially the same." (Tr. 17.) To support this conclusion, the ALJ relied on the objective medical evidence, including imaging and other diagnostic records reflecting that while Plaintiff had moderate to severe degenerative disc disease, severe facet spondylosis, multilevel bilateral severe foraminal stenosis, mild diffuse lumbar degenerative disc disease, mild lower lumbar dextroscoliosis, and moderate lower lumbar facet spondylosis, her pain levels remained stable over multiple years while Plaintiff continued working. (*Id.*)

The ALJ also relied on Plaintiff's daily activities to discount her testimony. (*Id.*) The ALJ cited Plaintiff's initial reports in which she denied needing any assistance when engaging in

PAGE 7 – OPINION AND ORDER

personal care, but she later reported needing help with putting on tops, shoes, and socks, as well as washing her hair. (*Id*.) Plaintiff also stated she could fold laundry, dust, do dishes, garden, and read "with breaks." (*Id*.) The ALJ also discounted Plaintiff's reports of disabling pain because Plaintiff declined treatment for her neck pain. (*Id*.)

In sum, the ALJ discounted Plaintiff's testimony about the intensity, persistence, and limiting effect of her symptoms based on (1) Plaintiff's failure to pursue available treatment options, (2) Plaintiff's activities of daily living, and (3) inconsistencies with the medical record. (*Id*.) Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting her testimony. (Pl.'s Br. at 2-9.)

### 3. Failure to Pursue Treatment

#### a. Applicable Law

"[I]n order to get benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007). An ALJ may discount a claimant's testimony due to "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Asture*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Kallenbach v. Berryhill*, 766 F. App'x 518, 521 (9th Cir. 2019) ("The ALJ provided specific, clear, and convincing reasons for discounting [the claimant's] testimony, including . . . [the claimant's] failure to seek and adhere to prescribed treatment" (first citing *Bray*, 554 F.3d at 1227; then citing *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002), and then citing *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012))). In some cases, use of conservative treatment such as over-the-counter medication is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

    **b.**  **Disposition**

  In discounting Plaintiff's pain testimony based on her failure to pursue treatment options, the ALJ cited to Plaintiff's neurosurgery records from April 2021. (Tr. 18.) In the relevant part of the record, Plaintiff reported progressively worsening pain she described as "excruciating" in the left side of her neck that radiated behind her left ear, down the side of her neck, and into her collarbone. (Tr. 511.) She further reported that the pain worsened with any type of movement and that her current medications, consisting of Flexeril, Celebrex, and tramadol, offered her no relief, while also noting that her right arm and shoulder pain had improved and were not "bothersome" to her that day. (*Id*.)

  Plaintiff's neurosurgeon recommended that she receive no further chiropractic intervention, and recommended that she receive epidural steroid injections and other "nonoperative conservative treatment measures" because surgical spinal fusion may "leave her with worsening neck pain and significant loss of range of motion." (Tr. 515-16.) The neurosurgeon also recommended adding gabapentin to her pain medications. (Tr. 516.) Despite stating that her pain levels that day were 10/10, Plaintiff declined steroid injections. (Tr. 511, 516.) Thus, substantial evidence supports the ALJ's discounting of Plaintiff's testimony for declining steroid injections to treat her pain.

  Plaintiff does not specifically challenge the ALJ's reasoning with respect to the treatment option she declined, but argues that her condition worsened progressively from August 2018 to September 2021. (Pl.'s Br. at 3-6.) Plaintiff specifically highlights that she reported experiencing severe pain from February to September 2021. (Pl.'s Br. at 4-6, citing Tr. 478, 482, 486, 491, 517, 521, 528-30, 532, 534, 536, 538-40.) However, Plaintiff declined steroid injections to treat her pain in April 2021. (Tr. 516.) Despite reporting continuing pain, Plaintiff did not pursue further treatment, and she reported in June 2021 that her medications were working well,

PAGE 9 – OPINION AND ORDER

allowing her adequately to manage her pain. (Tr. 20, citing Tr. 526.) On this record, the Court finds that the ALJ did not err by discounting Plaintiff's testimony on the ground that she failed to pursue an available treatment option.

### 4. Inconsistency with Medical Evidence

#### a. Applicable Law

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination") (citations omitted); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)).

#### b. Disposition

In concluding that Plaintiff's testimony was inconsistent with the objective medical evidence, the ALJ cited records from 2017 to 2021 reflecting that Plaintiff's neck pain levels mostly remained consistent at five to seven out of ten while Plaintiff worked as a labeler and housekeeper. (Tr. 18, citing Tr. 398, 402, 414, 420, 422, 424, 427, 429, 472.) The ALJ also cited neurological exams in which Plaintiff had largely intact strength, sensation, and reflexes in her upper extremities. (*Id.*, citing Tr. 384-86, 446-48, 472-78, 511-16.) The ALJ noted that Plaintiff had variable range of motion in her neck, with at least one report from August 2017, before her alleged onset date, stating that she had limited active range of motion with 7/10 neck pain and 3/10 low back pain. (*Id.*, citing Tr. 398.) The ALJ also noted a report from March 2021, in which

PAGE 10 – OPINION AND ORDER

Plaintiff had full range of motion in her neck. (*Id.*, citing Tr. 533.) While Plaintiff also complained of radiating pain into her upper extremities, as well as upper extremity weakness, records reflect that she denied experiencing radiating pain, that she stated the radiating pain had improved to the point where it was not bothersome, and that on exams she experienced no numbness or tingling in her upper extremities except for some decreased sensation in the bilateral fingers to pinprick. (*Id.*, citing Tr. 473-75, 485-86, 532.) In light of these medical records, the Court finds that the ALJ did not err in discounting Plaintiff's testimony as inconsistent with the objective medical record.

With respect to Plaintiff's arguments that the ALJ did not properly consider the overall trajectory of Plaintiff's progressive symptoms and did not formulate separate RFCs to address Plaintiff's limitations during two discrete time periods (*see* Pl.'s Reply Br. at 4-13, 15), the Court finds that the ALJ's analysis was legally sufficient as applied to Plaintiff's longitudinal symptom profile. Plaintiff's complaints of a progressively worsening condition put her pain levels at their worst from February to August 2021, with her reporting "severe" and "excruciating" pain at 8/10 or higher. (Pl.'s Br. at 5-6, citing Tr. 478, 511, 528, 530, 532.) In this same time period, however, Plaintiff refused further treatment in the form of steroid injections despite the excruciating levels of pain, and also reported that her pain medication regimen allowed for adequate pain management.[3] (Tr. 516, 526.)

---

[3] This case is distinguishable from *Smith v. Kijakazi*, 14 F.4th 1108, 1111-13 (9th Cir. 2021), in which the Ninth Circuit found that the ALJ erred by focusing on the claimant's late-period symptoms where the record reflected that his symptoms had "dramatically improved" since the alleged onset date. *See id.* at 1113 ("The ALJ therefore erred by disregarding all of [the claimant's] testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony."). Here, Plaintiff alleges that her symptoms worsened over time until at the time of the November 2021 hearing, she was unable to look down and must maintain an eye level gaze. (Pl.'s Br. at 4, citing Tr. 420, 430-31, 454, 463, 469, 478, 491.) The ALJ discounted Plaintiff's hearing testimony based on conflicting

The Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony based on her decision not to pursue available treatment options, as well as inconsistencies between Plaintiff's reported symptoms and her medical records.

## II.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting the opinion of Plaintiff's nurse practitioner, VanderWall. (Pl.'s Br. at 13-17.)

### A.    Applicable Law

The 2017 version of the medical evidence regulations applies here because Plaintiff filed her application after March 27, 2017.[4] *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

---

medical evidence throughout the alleged period of disability, including medical records from 2021 (indicating that Plaintiff contemporaneously declined to pursue available treatment and reported adequate pain management, as discussed above). There was no reason here for the ALJ to formulate a second RFC to reflect Plaintiff's early-period limitations.

[4] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024). Plaintiff challenged the validity of the regulations in her opening brief (Pl.'s Br. at 9-13), but "concede[d]" her arguments, at least in part, in her reply brief in light of *Cross*. (Pl.'s Reply Br. at 2-3.) The Court agrees that *Cross* moots Plaintiff's challenges to the regulations. *See Cross*, 89 F.4th at 1217 ("The Social Security Administration's 2017 medical-evidence regulations fall within the broad scope of the Commissioner's authority under the Social Security Act, and the agency provided a reasoned explanation for the regulatory changes, making the regulations neither arbitrary nor capricious under the APA.").

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" Woods, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" id. at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" Id. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" Id. (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." Id. (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)." Id.

§ 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant, specialization, and facts that tend to support or contradict a medical source's opinion. *Id.* § 404.1520c(c)(3)-(5).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.     Analysis

The Court concludes that substantial evidence supports the ALJ's evaluation of VanderWall's medical opinion.

#### 1.     VanderWall's Opinion

On September 20, 2021, VanderWall provided a medical opinion in the form of checking "yes" and signing and dating a document authored by Plaintiff's attorney. (Tr. 534-35.) In VanderWall's opinion, Plaintiff would "most likely be limited to a relatively static gaze" due to cervical range of motion loss attributed to her degenerative disc disease and spondylosis. (Tr. 534.) VanderWall also stated that Plaintiff should be limited to sedentary activity because she could only lift and carry up to ten pounds to prevent her from experiencing cervical pain. (*Id.*) Finally, VanderWall opined that due to Plaintiff's degree of pain from her degenerative disc

disease and spondylosis, it would "likely" be a challenge to stay on task and consistent on a "sustained basis." (Tr. 535.)

### 2. The ALJ's Decision

The ALJ found VanderWall's opinion unpersuasive. (Tr. 20.) The ALJ explained that VanderWall's opinion was "equivocal or imprecise, such as stating she [would] *likely* be limited to a *relatively* static gaze, and that even sedentary *could* pose a problem." (*Id.*) The ALJ further explained that VanderWall's assessment was inconsistent with her own treatment notes, such as a report from June 2021 in which she stated that Plaintiff's medication "regimen is working well for her and she is able to manage her pain without side effects and the claimant has not utilized recommended treatment such as epidural steroid injections." (*Id.*, citing Tr. 526-27) (simplified). The ALJ also noted that while VanderWall reported Plaintiff needed to maintain her head in a relatively static position, VanderWall's own notes from March 2021 stated that Plaintiff had full range of motion in her neck. (*Id.*, citing Tr. 533.) Finally, the ALJ noted that while VanderWall's records indicated that Plaintiff had little voluntary movement at her next three visits and reported significant decreased range of motion at a visit in August 2021, VanderWall did not quantify actual function and provided "no specifics." (*Id.*, citing Tr. 524, 527, 529, 531.)

### 3. Disposition

The Court concludes that the ALJ did not commit harmful error in evaluating VanderWall's opinion.

The ALJ correctly noted that the limitations VanderWall offered in her opinion lacked specificity. VanderWall's statements that Plaintiff is *likely* limited, has a *relatively* static gaze, or that sedentary positions *could* pose issues are too vague to be translated into specific functional limitations. *See Ford*, 950 F.3d at 1156 (affirming the ALJ's rejection of a medical opinion because the medical source's statement that a claimant is "limited" or "fair" were "inadequate for

PAGE 15 – OPINION AND ORDER

determining RFC"); *Matthew M. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5786-DWC, 2023 WL 3966402, at *2 (W.D. Wash. June 13, 2023) ("[The medical] opinion here lacked specificity as to Plaintiff's actual functional limits, therefore the ALJ could reasonably discount his opinion for its vagueness."); *Packard v. Comm'r of Soc. Sec.*, No. 1:20-CV-00463-SAB, 2021 WL 2003094, at *6 (E.D. Cal. May 19, 2021) (holding that where a nurse practitioner "opined that Plaintiff's chronic back pain causes issues with prolonged sitting and standing and shoulder rotation makes use of arm limited" the "ALJ properly found that [the] opinion lacks specificity as to the limitations themselves").

Furthermore, the ALJ's conclusion that VanderWall's opinion was inconsistent with her own treatment records was supported by substantial evidence, including treatment records reflecting that Plaintiff had full range of motion in her neck and reported that her pain regimen was working, she was able to manage her pain, and she experienced no side effects. (Tr. 20, 524, 526, 533.)

Ultimately, Plaintiff urges this Court to support a different interpretation of the evidence, but "where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

For these reasons, the Court finds that the ALJ's reasons for discounting VanderWall's opinion were supported by substantial evidence.

### III.    STEP FIVE

Plaintiff asserts that the ALJ erred by failing to include in the RFC a limitation regarding her inability to move her head up and down and side to side. (Pl.'s Br. at 17-18.)

####    A.    Applicable Law

The RFC must contemplate all medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions

of medical providers and the subjective symptom testimony set forth by the claimant. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); s*ee also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that the ALJ is responsible for translating the claimant's impairments into concrete functional limitations). In determining the RFC, the ALJ is required to take "into account those limitations for which there was record support." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (holding that "[a]n ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence").

  **B.**  **Analysis**

  Plaintiff argues that her RFC should have included limitations related to her inability to move her head up and down and side to side. (Pl.'s Br. at 18, citing Tr. 58-59.) As discussed above, the ALJ provided valid reasons to discount Plaintiff's symptom testimony. The ALJ is not required to account in the RFC for symptoms and limitations that the ALJ has appropriately discounted. *See Bayliss*, 427 F.3d at 1217 (affirming the ALJ's RFC determination where "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"); *Jon M. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-cv-00207-HZ, 2023 WL 2932009, at *6 (D. Or. Apr. 12, 2023) ("The ALJ did not include all of the limitations set out in Plaintiff's testimony, however, the Court has concluded the ALJ did not err when he partially rejected Plaintiff's testimony. Accordingly, the Court concludes the ALJ did not err when he did not conduct a 'function-by-function assessment' of Plaintiff's RFC.").

In light of the Court's conclusion that the ALJ appropriately discounted Plaintiff's symptom testimony, the Court finds that the ALJ did not err by not including head movement limitations in Plaintiff's RFC.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and is supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 15th day of November, 2024.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge